IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MITCHELL WATERS,                          *
                                          *
            Plaintiff,                    *
                                          *
      v.                                  *          Civil Action No. ADC-23-1178
                                          *
THE MAYOR AND                             *
CITY COUNCIL OF BALTIMORE,                *
                                          *
            Defendant.                    *
                                          *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendant, the Mayor and City Council of Baltimore ("the City"), moves this Court

for summary judgement pursuant to Federal Rule of Civil Procedure 56(a). ECF No. 45.

Plaintiff has responded in opposition. ECF No. 49. Defendant has further filed a reply. ECF

No. 56. After considering the motion and the responses thereto, the Court finds that no

hearing is necessary.[1] Loc.R. 105.6 (D.Md. 2021). For the reasons stated herein,

Defendant's motion is GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Lieutenant and Firefighter Paramedic Mitchell Waters, is an African

American Male who resides in Baltimore County. ECF No. 6 at ¶ 13. Plaintiff works at the

Baltimore City Fire Department ("BCFD") and is a member of Baltimore Fire Officers

---

[1] On July 19th, 2023, this case was assigned to United States Magistrate Judge A. David
Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No. 13. All
parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF Nos. 19 & 22.

Association IAFF Local 964, a Labor Union representing Lieutenants, Captains, and Battalion Chiefs of the Baltimore City Fire Department. *Id.* at ¶ 15. Plaintiff claims that his challenges at work began on April 11, 2021, during an incident with Baltimore County Medic Emily Cole that took place as Plaintiff responded to a call as a part of his duties with Engine 43. ECF No. 49-1 at 3.

Plaintiff insisted that a patient required "hospital transport" and Mrs. Cole allegedly refused. *Id.* Following the exchange, Plaintiff claims that Mrs. Cole's husband, Lt. Christopher Cole of BCFD, filed a complaint against Plaintiff. *Id.* Plaintiff further claims that this complaint led "to a Notice of Investigation (NOI) the next day and Plaintiff's immediate suspension for workplace violence and insubordination." *Id.* Plaintiff also alleges that the suspension "took place without a hearing, violating BCFD's own Manual of Procedures[,]" and that this treatment differed from "the due process granted to White firefighter Kevin Brown under similar circumstances." *Id.*

Plaintiff claims that Mrs. Cole's accusations against him "were proven false" and that he later filed an internal complaint and defamation lawsuit against Mrs. Cole. *Id.* Following these developments, Plaintiff alleges that "Battalion Chief (BC) Kenneth Haag pressured Michael Bennett to change his previous witness statement in support of Plaintiff to an 'insubordination' complaint against Plaintiff." ECF No. 49-1 at 4. Plaintiff further takes issue with the origin of the internal complaint against him, claiming that it originated with Lt. Cole and not with Mr. Bennet. *Id.* Next, "Plaintiff was found guilty of all charges and suspended for 14 days," which Plaintiff claims caused him stress and resulted in him taking additional leave. *Id.* Plaintiff alleges that he attempted to file grievances with Local

2

Union 964, but that "Union President Joshua Fanon had decided not to proceed with the grievances, despite their merit." *Id.*

Plaintiff views a series of events that followed as further evidence of "increased scrutiny and retaliation for his complaint against Mrs. Cole." *Id.* Specifically, Plaintiff claims that Lt. Cole accessed Plaintiff's personnel file and removed records of traffic tickets that he had previously disclosed. *Id.* Although Plaintiff claims he provided documentation about the traffic tickets when contacted, he alleges that he later received a notice of investigation concerning the same traffic tickets. *Id.* However, in June and December of 2021, Plaintiff claims he was later "acquitted of all traffic-related charges from 2020." ECF No. 49-1 at 5.

Plaintiff proceeded to file an EEOC complaint against Lt. Cole and Chief Haag "for their involvement in retaliatory investigations." *Id.* Plaintiff further reported "experiencing harassment and intimidation from BCFD leadership." *Id.* Then, by July 16, 2021, Plaintiff claims he escalated his concerns to the Office of the Inspector General, "citing a pattern of discriminatory behavior within BCFD." *Id.*

This incident represents one of several interactions with his colleagues that Plaintiff describes as "Disciplinary Action without Due Process[.]" ECF No. 49-1 at 5. Another alleged example of this conduct occurred on October 19, 2021, when Plaintiff received instructions to report to BCFD's headquarters for an interview regarding a harassment complaint filed against him. *Id.* Plaintiff claims that he did not receive notice of this complaint through official channels and believes that this lack of documentation "violated due process" along with BCFD's own procedures. *Id.*

Plaintiff claims that an additional incident occurred on November 8, 2021, when Plaintiff was "suspended on the spot for alleged insubordination based on a verbal complaint that he had violated an order from Chief Taft regarding a nonexistent petition." *Id.* Plaintiff further claims that this suspension took place without a required preliminary suspension hearing, violating MOP 312-1. *Id.* Specifically, Plaintiff alleges that he had never received any order on the matter, nor had he been in possession of a petition from Chief Taft, and that this "lack of procedure and baseless nature of the allegations demonstrates a pattern of retaliation against Plaintiff." *Id.*

Next, Plaintiff claims that the situation escalated on November 28, 2021, when Battalion Chief Haag physically pushed Plaintiff while he was discussing work matters with his Lieutenant, Kenneth McNeil. *Id.* Plaintiff claims that the incident caused significant stress, causing him to seek therapy for "anxiety and panic attacks[,]" and that others witnessed the encounter. ECF No. 49-1 at 6.

Plaintiff alleges that another improper disciplinary action occurred on January 5, 2022, the day Plaintiff "transitioned from Local Union 734 to Local Union 964." *Id.* On this same day, Plaintiff claims that Deputy Chief Doles "signed two special orders that unjustly suspended Plaintiff for fourteen days for offenses he did not commit." ECF No. 49-1 at 6. Plaintiff stresses that the "time taken by Chief Doles to render a decision, 82 days, was unusually prolonged and was intended to undermine any support from Local Union 964 for Plaintiff's grievance." *Id.*

Next, Plaintiff claims that, on January 24, 2022, he was on duty at Truck 23 following the deaths of three firefighters earlier that morning. *Id.* Mrs. Rachel Butrim, the

4

widow of deceased firefighter Lt. Paul Butrim, was transported from the fire scene to Truck 23 to await further information. *Id.* Plaintiff claims he found Mrs. Butrim and her family in the office where he was assigned to work and, after expressing his condolences to the family, that he resumed his duties. *Id.* However, on January 27, 2022, Plaintiff claims he received "harassing and threatening messages from Lt. Joseph DiRusso, accusing him of being in the office with the Butrim family on January 24 while performing his duties." *Id.* Plaintiff further claims that these messages were racially charged, that he reported them to his superiors, and that they failed to take immediate action against Lt. DiRusso, "violating the workplace violence policy outlined in the Manual of Procedure (MOP) 357-1." *Id.*

Plaintiff later took part in what he describes as an "investigative interview" with Battalion Chief Mya McConnell regarding his January 24 encounter with the Butrim family. ECF No. 49-1 at 7. During this interview Plaintiff claims that he "suffered a panic attack and broke down in tears" as he recounted his experiences with what Plaintiff viewed as racism in the workplace. *Id.* Plaintiff further alleges that Chief McConnell documented this response, and that Lt. Thomas Skinner from Local 964 was present as a witness. ECF No. 49-1 at 7.

On March 10, 2022, Plaintiff claims he received a disciplinary packet that referenced complaints previously filed by Lt. DiRusso, which had since been dismissed. *Id.* Plaintiff claims that while "other witnesses corroborated Plaintiff's account, EVD Coster provided a false statement intending to penalize Plaintiff." *Id.* Due to these allegedly false statements, Plaintiff filed disciplinary charges against EVD Coster on March 16, 2022. *Id.*

5

Next, on April 6, 2022, Plaintiff received notice "of a disciplinary hearing related to complaints from the Butrim family." *Id.* Plaintiff claims that these complaints "were influenced by EVD Coster and characterized by inconsistencies that undermined their credibility." *Id.* On April 27, 2022, Plaintiff claims that Ms. Wood determined that Plaintiff's workplace violence complaint against Lt. DiRusso was unsubstantiated, and that this finding further showed "perceptions of racial bias in BCFD's handling of grievances." *Id.*

On July 14, 2022, Plaintiff claims he received the outcome of his hearing regarding the Butrim family's allegations, and that the "finding was that Plaintiff was at fault for carrying out his assigned duties as a firefighter." *Id.* In Plaintiff's view, this decision "exemplified the ongoing retaliation and discrimination Plaintiff had endured during his tenure at BCFD and the hostile environment he was forced to navigate while attempting to serve his community." ECF No. 49-1 at 8.

As noted above, Plaintiff filed departmental charges against EVD Matthew Coster for making false statements on March 16, 2022. ECF No. 49-1 at 8. Plaintiff further claims that, during an interview with BC Kirk Thomas, he "sensed racial bias, suspecting EVD Coster would face no consequences." *Id.* Then, on May 5, 2022, Plaintiff claims he received anonymous text messages "from a number resembling one used by BCFD local unions." *Id.* Plaintiff further claims that the messages "contained violent threats, racial slurs, and specific references to Plaintiff's address and nearby streets, indicating the sender's presence outside his residence." *Id.* Plaintiff "strongly suspects" that these messages originated from EVD Coster but offers no further evidence to support this theory.

*Id.* Additionally, Plaintiff claims that he reported these communications to the Baltimore City Police Department and BCFD leadership but that "no action was taken to investigate or address the situation." *Id.*

Plaintiff describes a series of events that followed as reflecting a "Pervasive Pattern of Retaliation Harassment and Over-Scrutinization[.]" *Id.* For example, on July 17, 2022, Plaintiff claims that he "initiated the Baltimore City Grievance Process." *Id.* However, Plaintiff alleges that Local Union 964 President Joshua Fannon pressured him to file his grievance through the Union, although Plaintiff claims he provided evidence that union representation is optional. *Id.* Plaintiff further offers that he "has reason to believe that this pressure was influenced by Fannon's close ties to the Butrim family." ECF No. 49-1 at 9. Specifically, Plaintiff "distrusted Fannon due to previous denials of his grievances, and ongoing retaliation from BCFD further discouraged him from pursuing additional complaints." *Id.*

Next, on September 25, 2022, "after working a 38-hour shift at Engine 27," Plaintiff claims that Deputy Chief Thomas Tosh attempted to charge him with lateness when he arrived at Engine 5 to begin a 10-hour overtime shift. ECF No. 49-1 at 9. However, Plaintiff further claims that a white firefighter, Joshua Cordell, was late under identical circumstances in August 2022, and received no lateness charges. *Id.* Thus, Plaintiff viewed Tosh's actions as racially discriminatory. *Id.*

On October 5, 2022, Plaintiff alleges that Chief Jason Goodwin "threatened to place Plaintiff on charges for allegedly tampering with a control box at Engine 27 to repair a door." *Id.* Plaintiff claims that he "reported the door malfunction to his superior and

clarified that the control box was always accessible for manual use." *Id.* Plaintiff claims

that Goodwin further acknowledged the Department's targeting of Plaintiff by admitting,

"[w]hen you are at odds with the Department, they tend to do stuff like this." *Id.*

On January 6, 2023, Plaintiff claims he discovered a nail "intentionally placed in

his turnout boot by someone in an attempt to injure him." *Id.* In another alleged incident,

on January 13, 2023, Plaintiff claims that a BC John Macken forced a family member of

Plaintiff's to leave Engine 33 during regular visiting hours while that family member

delivered food to Plaintiff. *Id.* Plaintiff stresses that this "contrasted with January 24, 2022,

when the Butrim family and friends were allowed on the second floor of the firehouse

under similar circumstances, highlighting racial bias." *Id.*

On March 3, 2023, Plaintiff alleges that "BCFD harassed Plaintiff for being late to

a school event, despite the delay being caused by his need to arrange medical care for his

subordinate, Denard Davis, who became unfit to continue his shift. ECF No. 49-1 at 10.

Lastly, on April 2, 2023, after working a 14-hour shift at Truck 26, Plaintiff drove 30

minutes across town for another overtime shift at Engine 30. *Id.* Plaintiff claims that he

"arrived at Engine 30 slightly late" because his relief, Lt. Hagley, improperly notified him.

*Id.* Plaintiff alleged that the Department "compelled Plaintiff to sign a notice of

investigation for this minor delay, despite regular occurrences of late relief among other

firefighters without penalties." *Id.* Plaintiff cites alleged examples of such lateness on the

part of Keith Harvey and Andrew Schaffer, claiming that neither individual faced

investigation or disciplinary actions. *Id.*

8

In sum, Plaintiff believes that these events "collectively illustrate a sustained pattern of discriminatory treatment based on race, retaliation for exercising [Plaintiff's] rights, and the creation of a hostile work environment within the Department." *Id.* Following these events, Plaintiff filed an Amended Complaint against BCFD in this Court on June 5, 2023. ECF No. 6. The Complaint contains five counts, alleging conduct on the part of BCFD that includes race and color discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count I); hostile work environment in violation of Title VII (Count II); retaliation in violation of Title VII (Count III); the violation of Plaintiff's civil rights under Section 1981 of the Civil Rights Act (Count IV); and violation of the Maryland Fair Employment Practices Act (Count V). *Id.* at ¶¶ 73-147. Plaintiff seeks a declaratory judgment, a permanent injunction, compensatory back pay, and punitive damages. *Id.* at 38-39. Defendant filed the present Motion for Summary Judgment on October 2, 2024. ECF No. 45. Plaintiff filed his response on October 30, 2024, ECF No. 49, and Defendant filed a reply on December 3, 2024. ECF No. 56.

## DISCUSSION

### Standard of Review

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a). *See English v. Clarke*, 90 F.4th, 636, 645 (4th Cir. 2023) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of some alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." (emphasis in original). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Anderson*, 477 U.S. at 248. There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the Court has drawn all reasonable inferences in favor of the nonmoving party and "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted); *see also McMichael v. James Island Charter School*, 840 Fed.Appx. 723, 726 (4th Cir. 2020).

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

**Analysis**

I.  Exhaustion

An individual alleging discrimination in violation of Title VII must file an administrative charge with the EEOC within three hundred days after the alleged unlawful employment practice occurred. See 42 U.S.C. § 2000e-5(e)(1). If a charge filed with the Commission is dismissed by the Commission... the person aggrieved is given ninety days after the giving of such notice a civil action may be brought. *See* 42 U.S.C. § 2000e-5(f)(1). In other words, before a Plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC. *Bryant v. Bell Atl. Md. Inc.*, 288 F.3d 124, 131 (4th Cir. 2002); *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). The EEOC charge defines the scope of the plaintiff's right to institute a civil suit. *Id.*

In calculating within what time period an EEOC charge must be filed, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (holding that a failure to promote and other retaliatory adverse employment decisions are "discrete acts which constitute "separate actionable 'unlawful employment practices'"). Further, "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Id.* at 110.

Here, Plaintiff's EEOC Complaint describes a series of alleged acts of discrimination, covering a timeline that concludes on May 5, 2022. However, in Plaintiff's

11

Complaint, he further sets forth acts of alleged discrimination that occurred on January 13, 2023 and April 2, 2023. ECF No. 6 at ¶¶ 63, 67. Here, the Court agrees with Defendant that Plaintiff's failure to include these allegations as part of his EEOC Charge preclude him from pursuing those claims in this action.

Plaintiff does not attempt to argue that these incidents represent separate but related incidents. ECF No. 49-1 at 10-11. Instead, Plaintiff attempts to argue that Defendant "Waived the Affirmative Defense of Failure to Exhaust Administrative Remedies by Failing to Plead It Timely." *Id.* at 10. To be sure, an affirmative defense not raised in a pleading is generally considered waived. *See, e.g.*, Fed. R. Civ. P. 8(c)(1) (stating that a party must affirmatively state any avoidance or affirmative defense in responding to a pleading); *Hine v. Prince George's Cnty.*, 2024 WL 918370, at *7-8 (D.Md. Mar. 4, 2024) (citing *Fort Bend Cnty. V. Davis*, 139 S. Ct. 1848, 1851-52).

However, in their Answer, under the heading "Ninth Affirmative Defense", Defendant stated that:

> The City asserts that Plaintiff is precluded from raising any new claims, allegations or causes of action that were not raised and/or that exceed the scope of the EEOC Charge of Discrimination which is the basis of the Notice of Right to Sue which is the subject of this litigation.

ECF No. 9 at 16. Thus, Defendant appears to have adequately set forth their affirmative defense in their Answer. *Id.* Accordingly, Defendant is entitled to summary judgment on the claims related to incidents alleged to have occurred on January 13th and April 2nd of 2023, as Plaintiff has failed to exhaust his administrative remedies. Still, even if Plaintiff

had exhausted his administrative remedies, Plaintiff's claims here would still fail for the reasons discussed further below.

II.     Race and Color Discrimination in Violation of Title VII (Count I)

In Count I, Plaintiff alleges discrimination on the basis of race, specifically asserting a theory of disparate treatment. ECF No. 6 at 28. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color ...." 42 U.S.C. § 2000e-2(a)(1). "To establish a prima facie case of disparate treatment, [a plaintiff] must show: (1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019) (citing *Coleman v. Md. Ct. of Apps.*, 626 F.3d 187, 190 (4th Cir. 2010)).

Additionally, "[w]here a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination . . . '[t]he similarities between comparators . . . must be clearly established to be meaningful.'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 Fed. App'x 745, 748 (4th Cir. 2017) (quoting *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008)). "In the employee discipline context, a prima facia case of discrimination is established if the plaintiff shows that [she] 'engaged in prohibited conduct similar to that of a person of another race [or sex] . . . and . . . that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person.'" *Kelley v. U.S. Parcel Serv., Inc.*, 528 Fed.App'x 285,

286 (4th Cir. 2013) (quoting *Moore v. City of Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir. 1985)).

"The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008); *see also Tex. Dep't of Cmty. Affs.*, 450 U.S. at 258 ("[I]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally."). If there are simply not "enough common features between the individuals to allow [for] a meaningful comparison," *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd on other grounds*, 553 U.S. 442 (2008), a district court may properly find there is "no disparity of treatment from which one could conclude that [the plaintiff's] discipline was a product of racial [or national origin] discrimination." *Hurst v. District of Columbia*, 681 F. App'x 186, 193 (4th Cir. 2017) (quoting *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)).

If the plaintiff establishes a prima facie case, the second step places the burden on the employer to assert a legitimate, non-discriminatory reason for the disparate treatment. *McDonnell Douglas*, 411 U.S. at 802. If the employer meets this step, the burden then shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the employer's purported reason was "pretextual." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 841 (D. Md. 2004), aff'd sub nom, 134 F. Appx. 627 (4th Cir. 2005). As this Court stated in *Venugopal*, "[w]hile the *McDonnell Douglas* framework involves a shifting back and forth of the evidentiary burden, Plaintiff, at all times, retains the ultimate burden of persuading

14

the trier of fact that the employer discriminated in violation" of the statute. *Venugopal*, 334

F. Supp.2d at 841.

Here, the Defendant is Plaintiff's employer and does not dispute that Plaintiff is a

member of a protected class. However, Defendant argues that "Plaintiff has no evidence to

show that any of the discipline or investigations undertaken by Defendant were based on

his race or his color." ECF No. 45-1 at 14. In other words, Defendant reasons that "because

Plaintiff has offered no more than his subjective beliefs, Plaintiff's disparate disciplinary

treatment claim must fail as a matter of law." *Id.*

Plaintiff disputes Defendant's arguments in his response. Specifically, Plaintiff

offers several purported examples of the Baltimore City Fire Department holding "African

American employees to harsher standards while White employees face little to no

accountability for more serious offenses." ECF No. 49-1 at 15. However, as Defendant

argues in their reply, the vast majority of the examples listed by Plaintiff fail to cite to

evidence other than his subjective beliefs and hearsay, with some of the alleged incidents

appearing in Plaintiff's Response for the first time. ECF No. 56 at 8.

After reviewing the relevant memoranda and supporting pieces of evidence, this

Court agrees with Defendant's arguments, and finds that Plaintiff has failed to meet his

burden here. Of the twelve examples cited by Plaintiff, two of these alleged incidents

include circumstances where Plaintiff believes he was discriminated against based on his

race and color where "employees outside of Plaintiff's protected class engaged in more

serious misconduct but faced either no disciplinary action or significantly less severe

consequences than those imposed on Plaintiff." ECF No. 49-1 at 11. The first of these

includes an incident where Plaintiff alleges that "Lt. Joseph DiRusso (White, male) verbally threatened Plaintiff on social media but was never suspended pending investigation[,]" adding "[n]or was he disciplined in any way." *Id.* Another incident involves Plaintiff's claim that EVD Matthew Coster made a false statement regarding events at Lt. Butrim's funeral, specifically accusing Plaintiff of "aggressively approaching Lt. Joseph DiRusso." *Id.* at 11-12. Plaintiff claims that "EVD Coster faced no disciplinary action despite three witnesses at the scene providing consistent testimony that contradicted Coster's statement." *Id.* at 13.

As an initial matter, Plaintiff has offered little supporting evidence for this Court to conclude that the alleged comparators here share significant similarities with Plaintiff. *See, e.g., Lightner,* 545 F.3d at 265. However, even if this Court were to find that these incidents establish a prima facie case of disparate treatment under Title VII, Defendant offers a non-discriminatory reason for the allegedly disparate treatment here. ECF No. 56 at 7-8. Specifically, Defendant explains that Lt. DiRusso's complaint against Plaintiff, referenced in incident A, was dismissed. *Id.* at 7. It further explains that the complaint filed by Plaintiff, referenced in incident B, was dismissed. *Id.* Thus, Plaintiff's contention that these examples demonstrate a pattern of disparate treatment is, at best, unclear. Furthermore, citing to relevant evidence in support of it claims, Defendant argues that both matters "were duly investigated under BCFD's discipline process as outlined in its MOP 312, and MOP 312-1 and both were recommended following the investigations to be dismissed." *Id.* at 7.

16

Defendant convincingly argues that Plaintiff has offered "no evidence" in this case to show that Defendant subjected him "to a different hearing [discipline] process" than that afforded to employees outside of his race and color. ECF No. 56 at 7 (citing *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 509 (1993)). Accordingly, because Defendant articulates a non-discriminatory reason for the allegedly disparate treatment, and Plaintiff has failed to show that the Defendant's reasons are pretextual, he fails to meet his evidentiary burden here.

Other examples cited by Plaintiff, listed "c-l" in his response, are largely based on Plaintiff's subjective beliefs, and are altogether insufficient for meeting Plaintiff's evidentiary burden at summary judgment. *See, e.g.*, *Ortiz v. Baltimore Police Dept.*, 2024 WL 4287999, at *4 (D. Md. Sept. 25, 2024) ("Hearsay cannot be considered in summary judgment context"); *Henderson v. Anne Arundel Co. Bd. of Educ.*, 54 F. Supp.2d 482, 484 (D. Md. 1999) (finding a plaintiff's subjective beliefs are "insufficient to survive summary judgment under the settled law of this Circuit."). In sum, Plaintiff fails to meet the required evidentiary burden here, and Defendant is entitled to summary judgment as to Count I.

III.    Hostile Work Environment in Violation of Title VII (Count II)

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *EEOC v. Sunbelt Rentals, Inc.*, 521

F.3d 306, 313 (4th Cir. 2008) (quoting *EEOC v. R&R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001)).

To state a hostile work environment claim, Plaintiff must allege that: (1) he experienced unwelcome harassment; (2) the harassment was based on his gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *see also Webster v. Chesterfield Cnty. Sch. Bd.*, 38 F.4th 404, 410 (4th Cir. 2022). Plaintiff has plausibly established the first element by demonstrating that he viewed the conduct at issue—which he alleges consisted of unjust suspensions, false accusations, improperly conducted investigations, and threats of violence—as unwelcome. ECF No. 49-1 at 24. However, Plaintiff cannot establish the remaining three elements at issue here.

*Harassment Based on Gender, Race, or Age*

"To satisfy the second element of a hostile work environment claim, [a] plaintiff must allege that she was harassed or otherwise discriminated against 'because of' her protected class." *Prosa v. Austin*, No. ELH-20-3015, 2022 WL 394465, at *36 (D. Md. Feb. 8, 2022) (citing 42 U.S.C. § 2000e-2). Further, "[t]he plaintiff may satisfy this burden by showing that, 'but for' her protected class, she would not have suffered discrimination." *Id.* Here, Plaintiff fails to satisfy this burden. As Defendant emphasizes in its motion, Plaintiff provides no evidence that he was subjected to any of the alleged conduct on the part of his employer because he was part of a protected class. ECF no. 45-1 at 14. Other than his subjective beliefs, Plaintiff points to alleged examples of his peers receiving more

favorable outcomes in workplace disciplinary investigations as evidence that he was targeted because of his protected class. ECF no. 49-1 at 22.

However, Defendant has provided ample evidence that Plaintiff was subjected to the same standard as his peers in this regard. ECF No. 56 at 7-8. Plaintiff also points to tense exchanges he had with his coworkers as evidence of such harassment. ECF No. 49-1 at 22-25. However, aside from messages from an anonymous sender that Plaintiff has been unable to link to any of his coworkers, none of these alleged exchanges include evidence that Plaintiff was targeted for harassment based on his protected class.

*Sufficiently Severe or Pervasive to Alter the Conditions of Employment and Create an Abusive Atmosphere*

In order to satisfy the "severe or pervasive" element, a plaintiff must demonstrate that they "subjectively perceive[d] the environment to be abusive" *and* "that a reasonable person would find [the environment] hostile or abusive[.]" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). "[T]he behavior need not be *both* severe and pervasive: the more severe the conduct, the less pervasive the plaintiff need prove that it is." *Williams v. Silver Spring Volunteer Fire Dept.*, 86 F.Supp.3d 398, 413 (D.Md. 2015) (quoting *Reed v. Airtran Airways*, 531 F.Supp.2d 660, 669 (D.Md 2008)). The Supreme Court of the United States has explained that "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonable interferes with an employee's work performance" are relevant considerations in the "severe or pervasive" inquiry. *Id.* at 23.

19

As stated above, Plaintiff offers alleged workplace incidents that range from verbal disputes to alleged physical confrontations with his colleagues. Summarizing these alleged events, Plaintiff states that "the false charges, investigations, and immediate suspension in violation of the policy were not legitimate actions but part of a pattern of discriminatory and retaliatory conduct." ECF No. 49-1 at 19. Plaintiff continues, stating that "[t]hese actions reflect the hostile work environment Plaintiff endured, where procedures were weaponized against him while false accusations were manufactured to justify unwarranted discipline." *Id.* at 20.

However, merely stating the third element of a prima facie case is insufficient to create a triable issue of fact. *See Williams*, 2014 WL 4388360, at *1. Here, again, Plaintiff has presented the Court with little to no evidence supporting his argument beyond hearsay and subjective belief. Defendant, on the other hand, has responded to each of Plaintiff's alleged examples of a hostile work environment, providing exhibits to support their claims, and has convincingly argued that a reasonable person would not find the environment to be hostile or abusive. ECF No. 56 at 12-26. Given this, the Plaintiff has failed to carry his burden as to this element of his hostile work environment claim. Still, even assuming that Plaintiff carried his burden as to the first three elements here, his claims would falter at the final element, discussed below.

*Basis for Imposing Liability on the Employer*

In sum, the record does not provide a basis for imposing liability on the Defendant here. "An employer may be held liable for a hostile work environment 'if it knew or should have known about the harassment and failed to take effective action to stop it by

20

responding with remedial action reasonably calculated to end the harassment.'" *Webster v. Chesterfield Cnty. Sch. Bd.*, 38 F.4th 404, 410 (4th Cir. 2022) (quoting *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 498 (4th Cir. 2015)). Here, not only has Plaintiff failed to produce evidence that the alleged conduct amounts to the standard required for a hostile work environment claim, but he has also failed to show that the Defendant knew about the alleged behavior and failed to take effective action. Defendant, on the other hand, has pointed to a disciplinary process that contains several "checks and balances" to ensure that it is applied in an unbiased manner. ECF No. 56 at 27. Furthermore, Defendant has provided copious evidence, in the form of disciplinary records and procedures, as well as caselaw to support its arguments. *Id.* at 27.

The Court here agrees with the Court of Appeals in *Sunbelt*, which stated that "workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard ... rolling with the punches is a fact of workplace life." *EEOC v. Sunbelt Rentals*, 521 F.3d 306, 315 (2008). In sum, while Plaintiff describes a far from harmonious workplace, he fails to meet his burden where it concerns the alleged hostile work environment under Count II, and Defendant is entitled to summary judgment as to Plaintiff's hostile work environment claims.

IV.    Retaliation in Violation of Title VII (Count III)

A Title VII retaliation claim can be proven "through direct evidence of retaliatory animus or via the application of the *McDonnell Douglas* burden-shifting framework." *Roberts v. Glenn Inds. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021). Under the *McDonnell*

21

*Douglas* framework, a Plaintiff must first establish a prima facie case of retaliation by proving "'(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005)). After this showing is. made, "the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason." *Roberts*, 998 F.3d at 122. If the employer makes this showing, the burden shifts back to the plaintiff to "rebut the employer's evidence by demonstrating the employer's purported non-retaliatory reasons were pretext for discrimination." *Id.*

Here, Plaintiff has likely satisfied the first two prongs of the *McDonnell Douglas* framework by showing that he engaged in a protected activity and that his employer later took adverse action against him, and Defendant concedes as much in its Motion. ECF No. 45-1 at 19. However, Plaintiff falters at the final prong of the framework here, as he has not provided sufficient evidence showing a causal connection between his engaging in a protected activity and the adverse actions alleged here. As discussed above, much of the evidence that Plaintiff provides to support his motion is based on hearsay or his subjective beliefs. ECF 49-1 at 28-30.

Still, even if Plaintiff met his burden under the third prong of the framework, Plaintiff's claims would still fail to survive Defendant's motion for summary judgment. Here, Defendant provides evidence that it took adverse employment actions against Plaintiff according to "its own policy and procedure in investigating complaints and

22

administering discipline regarding the Plaintiff when warranted." ECF No. 45-1 at 20. In

sum, because Defendant has provided a non-retaliatory reason for the adverse actions here,

and because Plaintiff has failed to show that Defendant's reasons were merely pretextual,

this Court will grant Defendant's claims as it relates to Count III.

V.    Claims under Sections 1981 and 1983 of the Civil Rights Act (Count IV)

In Count IV, Plaintiff alleges that Defendant violated his rights under sections 1981

and 1983 of the Civil Rights Act. ECF No. 6 at 34. Both Plaintiff and Defendant

acknowledge that Plaintiff's claims of discrimination under §§ 1981 or 1983 are analyzed

under the same standards developed in Title VII cases and under the same Title VII proof

scheme. ECF No. 45-1 at 20; ECF No. 49-1 at 29. The prima facie components of Plaintiff's

§§ 1981 and 1983 claims mirror the same prongs that he must prove under Title VII. *Causey*

*v. Balog*, 162 F.3d 795, 804 (4th Cir. 1998) (citing *Gairola v. Virginia Dept. of General*

*Services*, 753 F.2d 1281, 1285 (4th Cir. 1985) (elements of a prima facie case are the same

under Title VII, § 1981 and § 1983)).

Further, in order to be successful in a claim for race discrimination under § 1981, a

plaintiff must "plead and ultimately prove that, but for race, it would not have suffered the

loss of a legally protected right." *Comcast Corp. v. National Assoc. of African American-*

*Owned Media*, 140 S. Ct. 1009, 1119 (2020). "Under this 'but-for' standard, it is not enough

to show that race played 'some role' in the defendant's decisionmaking process." *State*

*Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic*, No. CCB-18-1279, 2022 WL

3106937, at *2 (D.Md. Aug. 4, 2022) (quoting *Comcast*, 140 S. Ct. at 1013, 1019).

Here, as discussed above, Plaintiff has failed to show that he was a victim of race or color discrimination, a hostile work environment, or retaliation under Title VII. For these reasons, his claims under §§ 1981 and 1983 also fail, and this Court will grant Defendant's motion as to Plaintiff's Count IV.

VI.    Claims under the Maryland Fair Employment Practice Act (Count V)

Plaintiff asserts a claim for violation of Maryland State Government Article §20-602 in Count V. ECF No. 37. Both Plaintiff and Defendant acknowledge that the Maryland Fair Employment Practice Act serves as a state analogue to Title VII. ECF No. 45-1 at 21; ECF No. 49-1 at 31. Specifically, "FEPA is the state law analogue to Title VII" and is "analyzed under the McDonnell Douglas burden-shifting framework, in line with claims under Title VII.". *Parker v. Children's Medical Center, Inc.*, 2024 WL 943438 at *6 (D. Md. March 4, 2024) (citing *Jennings v. Frostburg State Univ.*, No. CV ELH-21-656, 2023 WL 4567976, at *18 (D. Md. June 27, 2023)).

Courts in Maryland have thus "traditionally sought guidance from federal cases in interpreting Maryland's FEPA." *Eubanks v. Mercy Med. Ctr., Inc.*, No. CV WDQ-15-513, 2015 WL 9255326, at *7 (D.Md. Dec. 17, 2015). FEPA "contains functionally identical prohibitions and is evaluated under the same framework" as Plaintiff's Title VII claims." *Campbell v. Becton, Dickinson & Co.*, No. 22-cv-3043-ELH, 2024 WL 1299354, at *24 (D.Md. Mar. 27, 2024) (quoting *Destiny Charity Rose Teel v. Md. Nat. Treatment Sols., LLC*, No. 23-cv-1694- RDB, 2024 WL 1075421, at *4 (D.Md. Mar. 12, 2024)). Courts have

also affirmed that a claim under FEPA may proceed under the *McDonnell Douglas* burden-shifting framework. *Campbell*, WL 1299354, at *27.

Here, again, Plaintiff's claims under Count V fail for the same reasons they fail under previous counts. Plaintiff has failed to establish a prima facie case for any of his claims and has not demonstrated that genuine issues of material fact are in dispute here. Accordingly, this Court will grant Defendant's motion for summary judgment as it concerns Plaintiff's claims under Count V.

In summary, several of Plaintiff's complaints revolve around administrative procedures, which Defendant has successfully rebutted. Absent evidence of racial bias, Title VII is not the remedy for procedural defects. Plaintiff suggests, without any evidentiary basis other than his own opinions, that race motivated those decisions. Plaintiff cannot simply rely on the self-belief of a racially discriminatory motive without evidence to put before a trier of fact. Also, the events surrounding Ms. Cole as well as his contact with Lt. Butrim's family immediately after his death, could have reasonably invoked discipline for his conduct alone. There simply is no credible evidence to present to a jury that race was the motivating factor.

With all of his conclusions and opinions he was told he was "at odds" with his department. ECF No. 49-1 at 9. Plaintiff suggests to the Court that the reason he was at odds is because of his race. It is of note that in the midst of his controversies, Plaintiff was promoted to Lieutenant by this very same department on January 5, 2022. ECF No. 49-1 at 21. It is not enough that Plaintiff believes that these events which responded in discipline

must have been racially motivated because Plaintiff cannot believe there was any other motive.

For the reasons stated above, Plaintiff's complaints of racial discrimination and retaliation are of his own beliefs and his own opinions. Each action taken by the Defendant was in direct response to Plaintiff's conduct. Plaintiff has presented no plausible evidence that race was the motivating factor on behalf of Defendant.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendant's Motion (ECF No. 45) is GRANTED and Plaintiff's Amended Complaint (ECF No. 6) is DISMISSED.

Date: _28 January 2025_

_____
A. David Copperthite
United States Magistrate Judge